IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN SMARRA,<br><br>                              *Plaintiff,*<br><br>v.<br><br>BOILERMAKER-BLACKSMITH<br>NATIONAL PENSION TRUST, *et al.*,<br><br>                            *Defendants.* | Civil Action No. 2:20-cv-860<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

      Plaintiff Sean Smarra ("Smarra") filed a two-count Complaint against Defendants Boilermaker-Blacksmith National Pension Trust and the Board of Trustees for the Boilermaker-Blacksmith National Pension Trust (collectively "Boilermakers") asserting a wrongful denial of benefits claim pursuant to 29 U.S.C. § 1132 and a breach of fiduciary duty to a pension trust participant claim pursuant to 29 U.S.C. § 1104. (ECF No. 1, pp. 10, 16). Smarra and Boilermakers filed competing motions for summary judgment. (ECF No. 50); (ECF No. 53). For the following reasons, the Court will enter summary judgment in Smarra's favor.

                                      **I.**      **FACTUAL BACKGROUND**

      Smarra was employed as a boilermaker until he was injured. After sustaining his injury, Smarra applied for a disability pension from Boilermakers. Smarra's application was accepted, but he contends that the monthly pension amount he is receiving is substantially less than what he is entitled to. The reduction in benefits is due to an amendment to the Pension Trust Plan that was adopted by Boilermakers. Smarra alleges Boilermakers breached its fiduciary duty owed to him

1

because Boilermakers failed to adequately inform him of the amendment and provided inaccurate and misleading information about making a claim for benefits.

On December 4, 2016, a substantial reduction of disability pension benefits was proposed to the Boilermaker Executive Committee. (ECF No. 52, pp. 11-12); (ECF No. 62, p. 11). The proposed benefit reduction was adopted as "Amendment No. 4" at a subsequent meeting on January 25, 2017. The effective date of Amendment No. 4 was October 1, 2017. Amendment No. 4 reduced disability pension benefits for those participants not yet being paid by .5% per month, for each month the participant was under the age of 65, up to a maximum reduction of age 55 (10 years). Additionally, under the policies applied by Boilermakers, payment of benefits could only begin one month after the receipt of an application for benefits and only if the application was post-marked or received before the fourteenth day of the preceding month. (ECF No. 52, pp. 12-13); (ECF No. 62, p. 12). Hence, to not be affected by Amendment No. 4, a participant had to submit or post-mark their disability benefit application by August 14, 2017.

Smarra was born in 1972. After graduating high school and attending two semesters of college, Smarra entered the Boilermakers's apprentice program in 1993 and he completed it in 1997. (ECF No. 52, p. 1); (ECF No. 62, p. 1). Smarra worked through the Boilermakers Local 154 union hall and became a participant in the Boilermaker Pension Trust. (ECF No. 52, p. 2); (ECF No. 62, p. 1). Beginning in 1995, participating employers for whom Smarra worked began making contributions based upon hours worked by Smarra to the Boilermaker Pension Trust.

In December 2014, Smarra was injured by an assailant who struck him in the face with a 40-ounce bottle. Smarra sustained severe facial lacerations and a closed head injury. He was unable to work for a period of time and upon returning, Smarra experienced difficulty with dizziness and blurred vision. (ECF No. 52, p. 3); (ECF No. 62, p. 3). Two years after the attack,

in December 2016, Smarra was advised by his physicians and Local 154 officials that he should no longer work as a boilermaker due to his continued dizziness. In the same month, Smarra consulted an attorney and applied for Social Security disability benefits. Smarra was not immediately advised whether the claim was accepted by the Social Security Administration. (ECF No. 52, p. 4); (ECF No. 62, pp. 3-4).

Additionally, Smarra consulted his family and other co-workers regarding the steps to obtain a disability pension from Boilermakers. (ECF No. 52, pp. 3-4); (ECF No. 62, p. 3). Throughout his employment as a boilermaker, Smarra accumulated over 24,381 credited hours and 750 of those came in 2016, the year in which he became disabled. (ECF No. 52, p. 2); (ECF No. 62, p. 2). Smarra was mailed annual pension statements by Boilermakers advising him that his pension benefits had "vested" and that upon retirement he would be entitled to a specified monthly benefit. In the statement mailed to Smarra dated December 16, 2016, the *"Monthly Amount Payable to You"* was in the amount of "$3,803.59." (ECF No. 52, p. 2); (ECF No. 62, p. 2).

On March 16, 2017, Smarra contacted Boilermakers via telephone and spoke to a pension specialist[1] representative named Stacy Higgins ("Higgins") to discuss filing for a disability pension. During the phone call, Smarra told Higgins that: (1) he could no longer work as a boilermaker; (2) that he had not previously spoken to the Boilermaker Plan nor received a disability pension application from them; and (3) that he had applied for Social Security Disability within the past few weeks but had not yet received a decision from the Social Security Administration. (ECF No. 52, pp. 4-5); (ECF No. 62, p. 4). Smarra contends that he informed Higgins that he

---

[1] The Wilson-McShane Corporation employs "pension specialists" who answer participant calls on behalf of Boilermakers. (ECF No. 55, p. 6); (ECF No. 60, p. 7).

wished to file for a disability pension. Boilermakers contests this fact and instead states Smarra said "I just wanted to know how I could figure out how much I would be getting a month." (ECF No. 52, p. 5); (ECF No. 62, p. 4). Smarra did not explicitly say he wished to file for a disability pension, but the transcript of the March 16, 2017 phone call indicates that Higgins understood this was Smarra's intention. (ECF No. 56-16). Further, Smarra was sent a letter and Pension Retirement Packet[2] dated March 17, 2017, that acknowledged his request for such materials. (ECF No. 56-18).

Higgins then went on to inform Smarra that "the disability pension from the Boilermakers is based on your eligibility with Social Security." Higgins also explained that the Boilermakers needed a copy of the Notice of Award issued by the Social Security Administration "because we need to know your date of entitlement and your date found disabled…[]… to determine your eligibility… ." Higgins further stated that an application could be sent out to Smarra along with a tentative estimate based on a "default" date of disability in order to "get the process started," but that the disability amount might have to be adjusted later when the Notice of Award was received. (ECF No. 52, pp. 5-6); (ECF No. 62, pp. 4-5).

Higgins did not inform Smarra that the Boilermaker Pension Trust provisions regarding the amount of disability benefits had been recently amended and that, as a result, benefits would be substantially reduced. Nor did she inform Smarra that if he failed to submit his Disability Pension Application to Boilermakers by August 14, 2017, his disability benefits would be reduced by approximately 60%. (ECF No. 52, p. 14); (ECF No. 62, p. 13). This was not an inadvertent omission. Beth Racki, the Director of Pension Operations for Wilson McShane Corporation,

---

[2] The Pension Retirement Packet included the following: Pension Application Time Line, Pension Application Instructions, Pension Application, and Benefit Payment Election Estimates. (ECF No. 56-18).

testified that Wilson-McShane personnel were told of the amendment to the Boilermaker Pension Trust around the time it was adopted in January 2017 and that the specialists would have received written details on the subject. The record confirms that Higgins was aware that the Boilermaker Pension Trust had been amended to substantially reduce disability benefits for any participant who was not yet receiving benefits by October 1, 2017. (ECF No. 52, pp. 13-14); (ECF No. 62, p. 13). However, Wilson-McShane employees were affirmatively instructed not to raise or discuss the upcoming changes with participants who contacted the Boilermaker Pension Trust and were further instructed that they were not to respond to questions on the subject.[3] (ECF No. 52, p. 15); (ECF No. 62, p. 13).

At the conclusion of the conversation, Higgins advised Smarra that when he received his Notice of Award, "… you will need to provide it *with* a pension application." (ECF No. 52, p. 6); (ECF No. 62, p. 5) (emphasis added). This instruction was consistent with other written materials provided to Smarra from Boilermakers. Smarra received a letter with his Pension Retirement Packet that quoted the following language from Section 4.09 of the Pension Plan:

> A Participant shall be entitled to a Disability Pension if he is totally and permanently disabled prior to attaining the age of 65 provided he:
>
>> (a) Has been awarded a Social Security Disability Benefit under Title II of the Social Security Act … [ ] … ; and …
>> (d) Has filed a written application for Benefits with the Fund Office … [ ] … **together with** a notice of award of disability benefits from the Social Security Administration …. (emphasis added).

(ECF No. 56-18, pp. 2-3). Additionally, the Summary Plan Description document provided to Smarra, dated July 2016, included the following instructions pertaining to the submission of a Disability Pension Application:

---

[3] This instruction was issued by Christine King, Boilermakers's Director of Retirement Plans. (ECF No. 52, p. 15); (ECF No. 62, p. 13).

**You are Required to Provide the Following Information**

Your application must include proof of your age and marital status. We may need additional information, depending on the type of benefit and form of payment you elect. The following table describes the documents required for various forms of benefit payment. If you do not provide necessary documents, your application and claim for benefits will be denied.

| Form of Benefit Payment | Documents Needed |
|---|---|
| Disability Pension | The documents listed above[4], plus<br><br>• A Social Security Notice of Award of Disability Benefits… |

(ECF No. 56-4, p. 16). Boilermakers also provided Smarra with written Pension Application Instructions and a Pension Application. The Pension Application Instructions contained the following section regarding the submission of a disability pension:

> **Disability Pension** – A periodic benefit payable at any age prior to age 65.
> • For a Disability Pension, verification of your entitlement to Social Security Disability, … [ ] … is required. Attach a copy of all pages of the Notice of Award issued by the Social Security Administration … [ ] ….

(ECF No. 56-17, p. 4).

Smarra also received information that contradicted these instructions. For example, earlier in the same Pension Application Instructions under the "General Information" section it stated:

> If all necessary documentation (i.e., proof of age, proof of marital status, etc.) requested with your Pension Application is not immediately available, forward the completed Pension Application to the Fund Office to establish your filing date and Annuity Starting Date. Benefits will be based on this date even though remaining documents will be received later.

(ECF No. 56-17, p. 2). Also, in the same Summary Plan Description referenced above, it stated:

---

[4] The documents listed above were a birth certificate or other acceptable proof of date of birth and proof of marital status. (ECF No. 56-4).

6

> Mail your Pension Application, and all required documentation to the Fund Office no later than the 14th day of the month before your Annuity Starting Date. Be sure to include all other forms sent to you by the Fund Office. If you do not have all required documents we suggest you send in your application without the documents to avoid a possible delay in your Annuity Starting Date.

(ECF No. 56-4, p. 14).

After his conversation with Higgins, Smarra believed that he could not submit an application to Boilermakers until he received a Notice of Award from the Social Security Administration. Therefore, Smarra did not submit a written application following the March 16, 2017 conversation and awaited the decision on his Social Security disability claim. (ECF No. 52, p. 9); (ECF No. 62, p. 9). Smarra was not informed by Boilermakers that it had a long-standing policy of permitting a disability pension application to be submitted without a Notice of Award letter, in which event the participant would be granted a period of 180 days after filing to provide the required Notice of Award.[5] (ECF No. 52, p. 15); (ECF No. 62, p. 14).

On April 28, 2017, Boilermaker Pension Trust mailed its participants a notice of Critical Status along with a notice describing the changes in Amendment No. 4. (ECF No. 55, p. 5); (ECF No. 60, p. 6). Smarra cannot definitively remember whether he received the Amendment No. 4 notice. *Id.* On September 4, 2017, Smarra's disability claim was accepted by the Social Security Administration and it issued a Notice of Award dated the same day. (ECF No. 52, p. 9); (ECF No. 62, p. 9); (ECF No. 52-11). Smarra is presumed to have received the Notice of Award on or about September 9, 2017.[6] The Notice of Award stated that the Social Security Administration

---

[5] Where a participant submitted a disability pension application without Notice of Award, and later supplied the Notice of Award within the 180-day period granted for an extension, the filing date of the application would be used by Boilermakers to establish an annuity start date for the payment of disability benefits. (ECF No. 52, p. 16); (ECF No. 62, pp. 14-15).
[6] Smarra received the Award letter on an unknown date after September 4, 2017. Under the policies and regulations of the Social Security Administration, a claimant is deemed to have

7

determined Smarra to have become disabled as of December 7, 2016. Smarra received his first payment of Social Security disability benefits on or about October 2, 2017. (ECF No. 52, pp. 9-10); (ECF No. 62, pp. 9-10).

On October 3, 2017, upon receiving his first disability payment, Smarra contacted Boilermakers concerning his disability pension, in order to "get that started." During this phone call, Smarra was informed by pension specialist, Goldie Piskuric, that he would "fall under the new rules," which provided that disability pensions awarded after October 1, 2017, were paid at a reduced benefit amount. (ECF No. 52, p. 10); (ECF No. 62, p. 10). On February 21, 2018, Smarra was awarded a disability pension by Boilermakers. The monthly benefit awarded was $1,393.21. This was approximately 40% of the estimated benefit amount that was provided to Smarra included with his Pension Application on March 17, 2017.[7] (ECF No. 52, p. 11); (ECF No. 62, pp. 10-11). The reduced benefit awarded to Smarra was in accordance with Amendment No. 4, which was adopted by the Boilermakers Trustees in January 2017. (ECF No. 52, p. 11); (ECF No. 62, p. 11).

## II.   STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

received his Notice of Award 5 days after the mailing date. (ECF No. 52, p. 9); (ECF No. 62, pp. 9-10).

[7] The estimated benefit amount given to Smarra on March 17, 2017, was $3,478.78 for a single individual with the election of 120 months guaranteed payments option. (ECF No. 52, p. 11); (ECF No. 62, pp. 10-11).

party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

"When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining for each side whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2016)). Under the same rule, if upon review of a party's motion for summary judgment, the court, viewing the evidence in the light most favorable to the nonmoving party, enters summary judgment for the moving party, the court may properly declare the opposing party's cross-motion for summary judgment as moot. *Beenick v. LeFebvre*, 684 F. App'x 200, 205–06 (3d Cir. 2017).

### III.  ANALYSIS

Smarra moves for summary judgment on Count II asserting a breach of fiduciary duty to a pension trust participant pursuant to 29 U.S.C. § 1104. (ECF No. 1, p. 16). The Court will grant Smarra's Motion for Summary Judgment (ECF No. 50).

####    A.      Fiduciary Duty

Smarra alleges that Boilermakers breached its fiduciary duty pursuant to 29 U.S.C. § 1104, which states in pertinent part that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest
> of the participants and beneficiaries and--
>     **(A)** for the exclusive purpose of:
>         **(i)** providing benefits to participants and their beneficiaries; and
>         **(ii)** defraying reasonable expenses of administering the plan;

> **(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;…

29 U.S.C.A. § 1104 (West). The Third Circuit Court of Appeals has explained that "[a]lthough the statute articulates a number of fiduciary duties, it is not exhaustive. Rather, Congress relied upon the common law of trusts to 'define the general scope of [trustees' and other fiduciaries'] authority and responsibility.'" *Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1299 (3d Cir. 1993). Accordingly, an ERISA "fiduciary may not, in the performance of [its] duties, 'materially mislead those to whom the duties of loyalty and prudence are owed.'" *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir. 2000) (quoting *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 57 F.3d 1255, 1261 (3d Cir. 1995) ("*Unisys II*"). This responsibility encompasses "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler,* 12 F.3d at 1300; *see Unisys II,* 57 F.3d at 1264 (explaining the duty "not to misinform employees" through either "misrepresentations" or "incomplete, inconsistent or contradictory disclosures"). Summarily, "when a fiduciary speaks, it must speak truthfully, and when it communicates with plan participants and beneficiaries it must convey complete and accurate information that is material to their circumstance." *In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 442 (3d Cir. 1996).

A breach of fiduciary duty claim may be premised upon either a misrepresentation or an omission. To establish such a breach, a plaintiff must demonstrate that: (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or

inadequate disclosure. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) ("*Unisys IV*").

The first element requires the plaintiff to demonstrate that the defendant was acting in a fiduciary capacity. ERISA defines "fiduciary" in functional terms of control and authority over the plan, not in terms of a formal trusteeship. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). As further explained in *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990) "[f]iduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions."

Here, Smarra alleges Boilermakers, acting by and through its respective agents, owed a duty to provide clear, accurate, and understandable guidance and information to disabled participants in the same position as Smarra concerning their rights and responsibilities with respect to claims for a disability pension. (ECF No. 1, p. 20). Specifically, Smarra alleges that Boilermakers is responsible for Higgins's misstatement and her failure to disclose information. Boilermakers concedes that Higgins told Smarra that he must provide a Notice of Award from the Social Security Administration with his disability pension application. (ECF No. 61, p. 3). Boilermakers argues that because Higgins was merely a "ministerial employee," it cannot be held responsible for her erroneous instruction because she was not acting as a fiduciary on behalf of Boilermakers. In support of this proposition, Boilermakers cites to *Carolinas Electrical Workers Ret. Plan v. Zenith Am. Sols., Inc.*, 658 F. Appx. 966 (11th Cir. 2016). This case, from the Eleventh Circuit Court of Appeals, does not accurately reflect the law of this Circuit.[8] In Smarra's briefing,

---

[8] *Carolinas* is an unpublished opinion that is factually distinguishable to the present case. In *Carolinas*, an employee pension benefit plan and its trustees sued the plan's former third-party administrator alleging a breach of fiduciary duties to the plan. The trustees alleged the third-party administrator convinced them to convert the plan's account from a cash-based accounting method to an accrual-based method and additionally alleged that the third-party administrator mishandled

he accurately cites to *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982 (3d Cir. 1995), which announces the applicable law of this Circuit. (ECF No. 65, p. 12).

*Taylor* involved an ERISA action brought by a former employee of Peoples Natural Gas Company ("PNG"), against members of the Annuities and Benefits Committee, which was the plan administrator of PNG's pension plan. The essence of the plaintiff's claim was that statements regarding the retroactivity of the pension plan's early retirement incentive program, made to him by PNG's Supervisor of Employee Benefits, John Burgunder, who was not a member of the Annuities and Benefits Committee, constituted a breach of the defendants' fiduciary obligation to communicate complete and correct material information to plan participants regarding their status and options under an employee benefit plan. The Third Circuit held the following:

> [W]e first ... [ ] ... address the important question presented – whether a plan administrator is liable for statements made by individuals who have been selected as non-fiduciary agents by the plan administrator to assist it in discharging its fiduciary obligation to administer a plan ... [ ] ... We answer this question in the affirmative, and conclude that the defendants are responsible for any material misstatement made by Burgunder to [plaintiff] regarding possible changes in PNG's pension plan since, in counseling [plaintiff], Burgunder was acting, at a minimum, within his apparent authority as an agent of the defendants.

*Taylor*, 49 F. 3d at 984.

The *Taylor* case is on point to the situation that occurred here between Smarra, Higgins and Boilermakers. Boilermakers, the plan administrator, selected Higgins, an individual non-fiduciary agent, to assist it in administering its plan. When Higgins spoke with Smarra on March 16, 2017, she did not inform Smarra of Boilermakers's Amendment No. 4, which she knew would directly affect Smarra's disability pension. In fact, Higgins was instructed not to raise or discuss

---

conversion so that it allocated more funds to participant accounts than the plan had in total assets. This case does not support Boilermakers's proposition because it does not address oral communications given to a plan participant by a third-party administrator.

the upcoming changes with participants who contacted the Boilermaker Pension Trust and was further instructed that she was not to respond to questions on the subject. (ECF No. 52, p. 15); (ECF No. 62, p. 13). These instructions were issued by Boilermakers's Director of Retirement Plans, Christine King. (ECF No. 52, p. 15); (ECF No. 62, p. 13). Additionally, at the conclusion of the conversation, Higgins counseled Smarra that when he received his Notice of Award, "… you will need to provide it with a pension application." (ECF No. 52, p. 6); (ECF No. 62, p. 5). Higgins was clearly acting with apparent authority as an agent of Boilermakers. Higgins counseled Smarra in a manner that would cause a reasonable person to believe she was giving advice on behalf of Boilermakers. Therefore, Boilermakers are responsible for any material misstatement or omission made by Higgins.

The second element of a breach of fiduciary duty claim requires that the defendant made "affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries." *Unisys IV*, 579 F.3d at 229. This element is best understood when viewed in conjunction with the third element, which requires that the "misrepresentation or inadequate disclosure was material." *Id*. A misrepresentation or omission by a fiduciary is material if "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision" or "a harmful decision regarding benefits." *Unisys II*, 57 F.3d at 1264 (quoting *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993)); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 76 (3d Cir. 2001). Determining whether a misrepresentation or inadequate disclosure bears a substantial likelihood of misleading a reasonable employee may involve examining whether the "fiduciary, as an objective matter, knew or should have known that a beneficiary would be confused" by the statement or omission. *Burstein*, 334 F.3d at 386 n. 31; *see also Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d

1171, 1182 (3d Cir. 1996) (describing omitted information as material if it is "known to the fiduciary but unknown to the beneficiary" and necessary for the beneficiary to "know for its own protection").

Here, the record demonstrates that Boilermakers made both affirmative misrepresentations and failed to adequately inform Smarra about material issues related to the Pension Trust Plan. Smarra contacted Boilermakers on March 16, 2017, to seek guidance about his claim for disability benefits. (ECF No. 52, p. 4); (ECF No. 62, p. 4). During the phone call, Smarra informed Higgins that he was unable to continue working as a boilermaker and that he had recently applied for but had not yet received a Notice of Award from the Social Security Administration. Higgins went on to explain to Smarra that when he received his Notice of Award, "…you will need to provide it with a pension application." (ECF No. 52, p. 6); (ECF No. 62, p. 5). This instruction was a material misrepresentation because Boilermakers had a policy of accepting disability pension applications without a Notice of Award from the Social Security Administration. Specifically, Boilermakers had a long-standing policy of permitting a disability pension application to be submitted without a Notice of Award, in which event the participant would be granted a period of 180 days after filing to provide the required Notice of Award. (ECF No. 52, p. 15); (ECF No. 62, p. 14). If the Notice of Award was supplied within the 180 days, the filing date of the application would be used by Boilermakers to establish the annuity start date for the payment of disability benefits. (ECF No. 52, p. 16); (ECF No. 62, pp. 14-15).

Also, Higgins knew that Smarra's disability pension application needed to be filed by August 14, 2017, in order for Smarra to fall under the pre–Amendment No. 4 rules, which would ensure his benefits were not reduced by approximately 60%. Higgins failed to inform Smarra of this information. (ECF No. 52, p. 17); (ECF No. 62, p. 15). She had been affirmatively instructed

by Boilermaker's Director of Retirement Plans to withhold the information about the Amendment No. 4 changes from plan participants. (ECF No. 52, p. 15); (ECF No. 62, p. 13).

The combination of the misrepresentations and omission misled Smarra, a reasonable employee, in making an adequately informed retirement decision. It is clear that Boilermakers, by and through Higgins, made misrepresentations and additionally failed to adequately inform Smarra of material information necessary for his own protection. The result of Higgins's actions and inactions caused Smarra to make a detrimental decision regarding his disability benefits. Smarra is currently receiving $1,393.21, a 60% reduction from his disability benefits under pre-Amendment No. 4 rules.

The last element needed to establish a breach of fiduciary duty requires a showing of detrimental reliance by the plaintiff. "Detrimental reliance is not limited to the retirement decision alone; rather it may encompass decisions to decline other employment opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement." *Unisys IV*, 579 F.3d at 229.

Based upon information supplied to Smarra, he understood and reasonably believed that he was not permitted to submit a Disability Pension Application unless and until he received a Notice of Award granting benefits issued by the Social Security Administration. (ECF No. 62, p. 8). In accordance with his understanding of the requirements for submission of a disability pension, Smarra did not submit a written application following the March 16, 2017, conversation and awaited the decision on his Social Security disability claim. *Id.* Smarra's disability claim was accepted by the Social Security Administration, which issued a Notice of Award dated September 4, 2017. Upon receiving his first disability payment from the government, Smarra again contacted Boilermakers on October 3, 2017, regarding his disability pension. Smarra was informed by the

pension specialist that he would fall under the new rules which provided that disability pensions awarded after October 1, 2017, were paid at a reduced benefit amount. *Id.*

Smarra detrimentally relied on the information provided by Boilermakers and its failure to disclose material information about imminent substantial changes to the Pension Trust Plan. Smarra did not file his disability application until he was awarded a Notice of Award from the Social Security Administration because this is what Boilermakers instructed him to do. Boilermakers did not inform Smarra of the upcoming Amendment No. 4 changes when he called on March 16, 2017. Therefore, Smarra relied solely on Boilermakers's representations and did so reasonably, as it was Boilermakers's duty to counsel and inform its plan participants regarding benefits. Through no fault of his own, Smarra did not have the correct information necessary to make the important financial decision pertaining to his retirement. Smarra actively reached out to Boilermakers via telephone to seek guidance on how to apply for disability benefits. Smarra detrimentally relied on Boilermakers's representations and instructions, and in doing so he lost approximately 60% of his retirement benefits.

Boilermakers owed Smarra a duty to provide clear, accurate, and understandable guidance and information. Boilermakers argues that an ERISA fiduciary can satisfy its disclosure obligations by issuing clear notices to participants. (ECF No. 61, p. 7). It contends that it adequately informed Smarra about Amendment No. 4 by mailing a notice to him over three months before the deadline to apply for pre-Amendment No. 4 benefits. Boilermakers further argues that the instruction or lack of instruction given by Higgins does not matter because Boilermakers sent Smarra notice about Amendment No. 4 after his conversation with Higgins. *Id.* at 8. Additionally, Boilermakers argues that the intervening notice rendered any reliance on Higgins's silence unreasonable. *Id.*

16

Boilermakers cites to *Staropoli v. Metro. Life Ins. Co.*, 465 F. Supp. 3d 501, 520 (E.D. Pa. 2020), which noted that a plan's silence is not actionable when the relevant plan documents are clear. The problem with Boilermakers's reliance on *Staropoli* is that the relevant plan documents, including the Amendment No. 4 notice, were far from clear and, therefore, Smarra's reliance on Higgins's instructions was reasonable. The Amendment No. 4 notice, which was dated May 2017, never used the words "reduction" or "reduced" when describing the effect of the amendment. (ECF No. 56-15). The notice listed eighteen different categories that were subject to "changes." Included in this list was "Amount of Disability Pension." This change was addressed on page eight of the notice and stated the following:

> **Old Rule:** For a Disability Pension with an Annuity Starting Date prior to October 1, 2017, the monthly amount is equal to the Basic Pension and Regular or Special Past Service Pension amount, if any, you would receive if you were age 65 at the time you became totally and permanently disabled.
>
> **New Rule:** For a Disability Pension with an Annuity Starting Date on or after October 1, 2017, the monthly benefit will be calculated in the same manner as the Unreduced/Partially Reduced/Reduced Early Retirement Pension, except that a Participant younger than age 55 will be treated as if he were age 55 at commencement.

*Id.* There is no statement notifying a disabled worker who is age 55 or younger that their disability pension will be reduced by 60%. To figure that out, the worker would first need to understand how "Unreduced/Partially Reduced/ Reduced Early Retirement Pension" benefits are affected by the Amendment. The worker would need to read the definitions appearing on pages five through seven of the notice, and then apply the "Pension Benefit Factor Chart" in order to determine if and in what amount a reduction of benefits was applicable. This process is not clear and requires that the worker reference multiple sections and apply tables to understand that benefits will be cut by more than half for disabled individuals 55 or younger.

Boilermakers also cites the Summary Plan Description which states, "If you do not have all required documents we suggest you send in your application without the documents to avoid a possible delay in your Annuity Starting Date." (ECF No. 56-4, p. 14). Furthermore, it references The Pension Application Timeline, which states "If you are missing a few of the documents required and expect to obtain those documents within the next few days, you may want to submit your Pension Application without the missing document in order to establish your requested Annuity Starting Date." (ECF No. 56-17, p. 1). Finally, Boilermakers references the Pension Application Instructions, which states "If all necessary documentation (i.e., proof of age, proof of marital status, etc.) requested with your Pension Application is not immediately available, forward the completed Pension Application to the Fund Office to establish your filing date and Annuity Starting Date." (ECF No. 56-17, p. 2). Yet, none of these instructions specifically referenced a Notice of Award from the Social Security Administration. Two of the instructions were merely recommendations as they state, "we suggest" and "you may want to." (ECF No. 56-4, p. 14); (ECF No. 56-17, p. 2). In fact, the Summary Plan Description and the Pension Application Instructions provided by Boilermakers state that participants must submit a Notice of Award to qualify for a disability pension. Boilermakers argues that these were meant to indicate what must be submitted rather than when they must be submitted. The Court disagrees.

In *Weaver Bros. Ins. Associates, Inc. v. Braunstein*, 2014 WL 2599929 (E.D. Pa., Jun. 9, 2014), the court addressed the adequacy and clarity of a benefit description contained in a Certificate of Insurance which the defendant contended was adequate to apprise the participant of a limitation in her employer-provided life insurance coverage. The *Weaver c*ourt held that mere issuance of written notice does not suffice to overcome a misrepresentation made directly to the participant, particularly when the written notice is vague and fails to directly and in a forthright

manner specifically advise of the effect of a pending, important change in benefits. Here, the materials provided to Smarra were far from clear and could be reasonably interpreted, consistently with the misrepresentations made by Higgins. The written notices were certainly not clear enough to overcome the misrepresentations and failure to inform and, therefore, Boilermakers has breached its fiduciary duty owed to Smarra.

B.   **Equitable Relief**

Where a plaintiff establishes a breach of fiduciary duty, the plaintiff is entitled to equitable relief pursuant to ERISA § 502(a). In *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), the Supreme Court addressed whether an ERISA fiduciary could be held personally liable to a participant or beneficiary. There, the plaintiff sued only under ERISA's fiduciary duty section, § 409(a), and its civil enforcement section, § 502(a)(2). The Court concluded that § 409 did not authorize recovery to an individual, rather individual recovery for breach of fiduciary duty was available elsewhere in the statute: the "other appropriate equitable relief" clause of § 502(a)(3). In *Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993), the Third Circuit adopted the approach of Justice Brennan in his concurrence in *Massachusetts Mutual* and stated the following:

> Section 404(a) is the touchstone for understanding the scope and object of an ERISA fiduciary's duties. The section is informative as to a trustee's accountability, for it establishes that a fiduciary "shall discharge his duties with respect to the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries." ERISA § 404(a), 29 U.S.C. § 1104(a). In carrying out those duties, the statute requires that a fiduciary satisfy a "prudent man" standard of care.
>
> These principles are given effect by § 502(a)(3) which, in the language of the statute, authorizes the award of "appropriate equitable relief" *directly* to a participant or beneficiary to redress any act or practice which violates the provisions of ERISA. Of course, this relief is independent of that established in § 409, authorizing recovery for breach of fiduciary duty on behalf of the plan. The question whether a beneficiary has a direct cause of action for breach of fiduciary duty depends, then, upon construction of *both* § 502(a)(3), which, as seen above,

19

generally authorizes individual civil actions for violations of the statute, and § 404(a), which defines the scope of an ERISA fiduciary's duties.

12 F.3d at 1299. Construing § 502(a)(3) and § 404(a) together, the Court in *Bixler* held that a participant may bring a direct action for breach of fiduciary duty against the trustees and administrators of an ERISA plan. *Id.* at 1300. Here, Boilermakers has breached its fiduciary duty owed to Smarra. Pursuant to *Bixler*, Smarra has properly sought appropriate equitable relief in accordance with Section 502(a)(3) to redress the breach of fiduciary duty by Boilermakers.

## IV.  CONCLUSION

In sum, considering all of the record evidence and even viewing it in the light most favorable to Boilermakers, the Court holds that no reasonable jury could find that Boilermakers fulfilled its fiduciary duty owed to Smarra. The Court will therefore grant Smarra's Motion for Summary Judgment (ECF No. 50).[9] Boilermakers's Motion for Summary Judgment (ECF No. 53) is rendered moot. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

2/8/22
Dated

---

[9] Smarra brought a wrongful denial of benefits claim at Count I, in which he sought the exact same relief as his breach of fiduciary duty claim at Count II. Smarra's breach of fiduciary duty claim at Count II is successful and he will obtain full relief. Therefore, the Court need not address Count I.